

Eastern District of Kentucky
FILED
SEP 2 9 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-580-GWU

JOHN W. RUNION,                          PLAINTIFF,

VS.         **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

    Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

  Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Runion

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, John W. Runion, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a depressive disorder and estimated borderline intellectual functioning. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Runion retained the residual functional capacity to perform a significant number jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, limited education, and semiskilled work experience could perform any jobs if he had no exertional limitations, but would be restricted to simple instructions and tasks, in task-focused settings, with only casual and infrequent co-worker contact, no public interaction, and moderate or low stress. (Tr. 276-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 277-8).

7

Runion

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. Mr. Runion had filed a prior application for SSI which was denied in a decision by an ALJ on August 24, 1995 (Tr. 56-66), more than seven years before his current alleged onset date of February 22, 2003 (Tr. 105). He indicated that he had worked in a factory and as a stock person between 1997 and 2003. (Tr. 110).

Regarding the ALJ's determination that Mr. Runion did not have a "severe" physical impairment, the Court finds no error. Although Mr. Runion alleged that he was in severe, constant pain, could not lift, bend, sit or walk for very long due to back and knee pain (Tr. 109, 264-5, 269-72), a physical examination by Dr. Tony Mancuso in December, 2003 produced essentially no abnormalities except for a somewhat reduced grip strength on the right side as opposed the left (Tr. 161-3). Dr. Mancuso indicated that the plaintiff, who was right-handed, had a firm handshake (Tr. 162) and described his grip as "normal" (Tr. 163). Dr. Mancuso summarized his examination by stating that there was no physical evidence for significant physical restrictions. (Tr. 164). An examination by Dr. A. Dahhan on March 7, 2003 is largely illegible, but it seemed to reflect complaints of tenderness. (Tr. 235). A left knee x-ray was obtained which showed only mild degenerative changes with no other abnormalities. (Tr. 236). There were no functional restrictions and apparently no further visits to this source. The plaintiff's treating family physician, Dr. Jerry

8

Woolum, submitted office notes of treatment from well before the alleged onset date of February 22, 2003, reflecting treatment for chronic prostatitis. (E.g., Tr. 211, 213-14). Mr. Runion was also treated by another source for this condition, without any functional restrictions being noted. (E.g., Tr. 210-11, 227-8). In August, 2003, the plaintiff complained of pain in his knees and ankles, and Dr. Woolum noted marked crepitation of the knees and some symptoms of chondromalacia, but extensive tests including a Sedimentation Rate, Rheumatoid arthritis factor and Antinuclear Antibody testing were all negative, as were x-rays of both knees. (Tr. 160, 233). Dr. Woolum concluded that the patient had "mild" degenerative joint disease. In February, 2004, Mr. Runion was seen with more complaints of back and leg pain, but Dr. Woolum noted the past negative workups, and concluded that the plaintiff had only musculoskeletal pain. (Tr. 158). While Dr. Woolum completed a physical residual functional capacity statement on June 27, 2005 indicating that the plaintiff was limited to standing and walking 30 minutes, sitting 15 to 20 minutes, was capable of performing no postural activities, and had a limited ability to push and pull, he noted that he conclusions were "results of what patient told me." (Tr. 238-40). The ALJ reasonably concluded that these restrictions were not based on objective findings, and were not supported by the objective evidence. (Tr. 16). Even though Dr. Dahhan had obtained an x-ray showing "mild" degenerative joint disease, Dr. Woolum's subsequent x-rays were negative, and there was evidently only one occasion that Dr. Woolum specifically recorded physical abnormalities of the

9

plaintiff's knees, which would be offset by the negative physical findings of Dr. Mancuso. In any case, his diagnosis of "mild" degenerative joint disease is inconsistent with extreme functional limitations. Accordingly, the ALJ could reasonably have relied on the prior conclusions of Dr. Mancuso and of a state agency physician who opined that the plaintiff did not have a "severe" physical impairment. (Tr. 206).

The plaintiff apparently made no complaints of psychological problems to Dr. Woolum, although evidence discussed in the 1995 ALJ decision indicates that he had undergone treatment at the Comprehensive Care Center in 1994. (Tr. 58). Mr. Runion was examined by Dr. Gary Maryman, a psychologist, on April 13, 2004, and complained initially only of physical problems. (Tr. 165). He did complain of a history of depression related primarily to "subjective pain," and "sometimes" became upset about not being able to do what he wanted to. (Tr. 166-7). Dr. Maryman diagnosed a depressive disorder and estimated borderline intellectual functioning, and concluded that the plaintiff seemed to be able to understand, remember, and carry out simple to somewhat slightly more complicated instructions and tasks, should be able to sustain concentration, focus, and persistence to complete and carry out at least a simple and repetitive work assignment over a routine work schedule, was somewhat more limited in attempting to deal with the general public, but should be able to adjust and adapt reasonably well to the stressors and pressures associated with a routine work atmosphere. (Tr. 168).

10

Runion

A state agency psychologist, Dr. Ilze Sillers, reviewed the record and concluded that Dr. Maryman should be given great weight. (Tr. 175). She indicated that Mr. Runion would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 171-2).

The plaintiff argues on appeal that the hypothetical question did not reflect the precise restrictions given by Dr. Sillers. Under the circumstances of the present case, however, the ALJ's hypothetical question was reasonably consistent with the conclusions of the psychological examiner, Dr. Maryman, in that it provided restrictions on working in stressful atmospheres, limited contact with co-workers and no contact with the public (a greater restriction than indicated by Dr. Maryman), and restrictions to simple instructions. (Tr. 276-7).[1]

The decision will be affirmed.

This the __29__ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[1] Moreover, it is noteworthy that Dr. Maryman was not sure that the plaintiff was always putting forth his best effort during the evaluation. (Tr. 167).

11